IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC. dba LDS HOSPITAL,<br><br>         Plaintiff,<br><br>v.<br><br>INTERMOUNTAIN UNITED FOOD AND COMMERCIAL WORKERS AND FOOD INDUSTRY HEALTH FUND,<br><br>         Defendant. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE RECOVERY OF BENEFITS CLAIM (ECF NO. 23), GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE FIDUCIARY DUTY CLAIM (ECF NO. 24), AND RESERVING JUDGMENT ON THE MOTIONS FOR SUMMARY JUDGMENT ON THE FAILURE TO PROVIDE PLAN DOCUMENTS CLAIM (ECF NOS. 23 & 24)**<br><br>Case No. 2:16-cv-01157-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Before the Court[1] are Plaintiff IHC Health Services, Inc.'s ("IHC") Motion for Summary Judgment (ECF No. 23) and Defendant Intermountain United Food and Commercial Workers and Food Industry Health Fund's ("Intermountain") Motion for Partial Summary Judgment (ECF No. 24). IHC did not file a reply in support of its Motion for Summary Judgment by the April 18, 2018 deadline; instead, it filed its reply

---

[1] The parties consented to proceed before the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 14.)

memorandum late, without seeking an extension of time or leave to so.  (See Order Granting Stipulated Mot. for Extension of Time for Briefing re Pl.'s Mot. for Summ. J., ECF No. 30 (setting April 18, 2018 deadline to file reply); IHC Reply to Def.'s Mem. in Opp'n, ECF No. 33 (filed April 20, 2018)).  The Court disregards IHC's untimely reply memorandum and considers all timely-filed briefs on the parties' Motions for Summary Judgment.

IHC's Complaint asserts three claims against Intermountain under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"):  (1) recovery of plan benefits under 29 U.S.C. § 1132(a)(1)(B) (first cause of action); (2) breach of fiduciary duties under 29 U.S.C. §§ 1104, 1109, and 1132(a)(2) and (3) (second cause of action); and failure to produce plan documents under 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1) (third cause of action).  (Compl., ECF No. 2.)  Intermountain seeks summary judgment on IHC's second cause of action for breach of fiduciary duties and third cause of action for failure to produce plan documents.  (Intermountain Mot. for Partial Summ. J. ("Intermountain Mot.") 2, ECF No. 24.)  In response to Intermountain's Motion, IHC concedes summary judgment on its second cause of action for breach of fiduciary duties.  (IHC Opp'n to Mot. for Partial Summ. J. ("IHC Opp'n") 1, ECF No. 28 ("On Count II, [IHC] concedes that summary judgment is appropriate.").  Because the parties agree that the Court should grant Intermountain's Motion on IHC's second cause of action for breach of fiduciary duties, the Court GRANTS summary judgment in favor of Intermountain as to that claim.

IHC also moves for summary judgment on its first cause of action for recovery of plan benefits and third cause of action for failure to produce plan documents.  (IHC Mot.

for Summ. J. ("IHC Mot.") 1, ECF No. 23.) Intermountain also seeks summary judgment on IHC's third cause of action for failure to produce plan documents. (Intermountain Mot. 1-2, ECF No. 24.)

As to the remaining two causes of action, for the reasons addressed below, the Court DENIES IHC's Motion as to the first cause of action for recovery of plan benefits, and RESERVES judgment on IHC's Motion and Intermountain's Motion as to the third cause of action for failure to produce plan documents. The parties should come to the final pretrial conference with a proposal about how to proceed.

### SUMMARY JUDGMENT STANDARD

The Court grants summary judgment when the evidence shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In an ERISA case like this, where both parties move for summary judgment and stipulate that no trial is necessary, 'summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor.'" Cardoza v. United of Omaha Life Ins. Co., 708 F.3d 1196, 1201 (10th Cir. 2013) (quoting LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d 789, 796 (10th Cir. 2010)).

In ERISA cases, the Court generally confines its review to the administrative record. Adamson v. Unum Life Ins. Co., 455 F.3d 1209, 1212 (10th Cir. 2006). However, the Court may consider "extra-record materials related to an administrator's

dual role conflict of interest." <u>Murphy v. Deloitte & Touche Grp. Ins. Plan</u>, 619 F.3d 1151, 1162 (10th Cir. 2010).

## <u>EVIDENTIARY ISSUES</u>

In opposing IHC's motion for summary judgment, Intermountain objects to certain of IHC's facts—supported by citations to the administrative record in this case—as inadmissible, unauthenticated, and/or containing hearsay.  (Intermountain Opp'n to Pl.'s Mot. for Summ. J. ("Intermountain Opp'n") 6–9, ECF No. 32.)  Intermountain's objections lack merit, and the Court overrules them.  The Court reviews the entire administrative record considered by the plan administrator in ERISA cases, including exhibits that may otherwise be excluded under the Federal Rules of Evidence.  <u>See</u>, <u>e.g.</u>, <u>Black v. Long Term Disability Ins.</u>, 582 F.3d 738, 746 n.3 (7th Cir. 2009) ("The Federal Rules of Evidence, however, do not apply to an ERISA administrator's benefits determination, and we review the entire administrative record, including hearsay evidence relied upon by the administrator."); <u>Bigley v. Ciber, Inc.</u>, No. 11-CV-0055-RBJ-MJW, 2012 WL 5494660, at *6 (D. Colo. Nov. 13, 2012) (unpublished) ("The administrative record is what it is.  If it contains hearsay that would be inadmissible in a court of law under the Federal Rules of Evidence, so be it.  The rules of evidence do not apply to what the plan or third party administrator may consider in evaluating a . . . claim.  If they rely on unreliable evidence, then that could and should be considered by the reviewing court in making a determination as to whether to affirm or reverse the decision of the administrators."); <u>Malenski v. Standard Ins. Co.</u>, No. CIV-11-408-SPS, 2012 WL 4485331, at *1 (E.D. Okla. Sept. 27, 2012) (unpublished) (overruling evidentiary objections to joint administrative record).

Intermountain also submits evidence outside of the administrative record in the form of a declaration from D.A. Jensen, former president and fund manager for JAS, Inc. ("JAS"), which provided third party administrative services for multi-employer benefit plans operated pursuant to ERISA, including Intermountain's Plan at issue in this case. (App. of Evid., Tab 1, Jensen Decl., ECF No. 32-1.)  Mr. Jensen's declaration addresses the relationship between JAS and Intermountain, and the third party administrative services it performed on Intermountain's behalf.  (See id.)  While the Court generally confines its review in an ERISA case to the administrative record, Adamson, 455 F.3d at 1212, the Court may consider materials outside the record if they relate to a plan administrator's "dual role conflict of interest."  Murphy, 619 F.3d at 1162. The Court will consider Mr. Jensen's declaration since it informs the applicable standard of review in this case.  The Court notes that IHC has not presented any evidence outside of the administrative record concerning Intermountain's alleged conflict of interest.

## FACTUAL BACKGROUND

From October 12, 2013 through November 12, 2013, K.M. received treatment at LDS Hospital.  (IHC Opp'n, Resp. to Undisputed Material Fact No. 3, ECF No. 28.) Plaintiff IHC operates LDS Hospital.  (IHC Opp'n, Resp. to Undisputed Material Fact No. 1, ECF No. 28.)  Defendant Intermountain's Plan, a multi-employer health and welfare plan, provided health coverage to K.M., a union employee whose membership entitled her to coverage, at the time of treatment.  (IHC Mot., Undisputed Material Fact No. 4, ECF No. 23; IHC Opp'n, Resp. to Undisputed Material Fact Nos. 1–4, ECF No. 28;

Compl. ¶ 7, ECF No. 2; Answer ¶ 7, ECF No. 6; AR[2] 149.)  This case arises out of a dispute between IHC and Intermountain over the amount Intermountain owes IHC for the care and treatment of K.M.  Intermountain notes that IHC named only the trust fund as a Defendant and not the "plan" as required under ERISA.  (Intermountain Opp'n, Resp. to Undisputed Material Fact Nos. 2 & 19, ECF No. 32; Intermountain Mot. 6 n.1, ECF No. 24.)  However, Intermountain concedes that for purposes of the Motions for Summary Judgment, IHC "sued the proper party."  (Id.)  While not specifically addressed in any of the briefs, the parties agree that LDS Hospital, where K.M. received treatment, is an out-of-network provider per the terms of Intermountain's Plan.  K.M. remains obligated to pay for all services provided to her by IHC for which Intermountain refuses to pay.  (AR 2.)

The Intermountain Plan is an ERISA covered plan.  (IHC Opp'n, Resp. to Undisputed Material Fact No. 2, ECF No. 28; Answer ¶ 3, ECF No. 6; AR 87.)  Intermountain's Board of Trustees is the Plan administrator.  (AR 82, 84.)  Intermountain's Summary Plan Description ("SPD") indicates that the Board of Trustees operates and administers the Plan and that the Board

> has full power to interpret the Plan and all Plan documents, agreements, rules, and regulations, and to decide all questions concerning the Fund, including, but not limited to, the eligibility of any person to participate in the Fund and his or her entitlement to Plan benefits.  The Board's interpretations and decisions concerning these matters are final and conclusive, so long as they are made in good faith and are not arbitrary or capricious.

(AR 82; Intermountain Opp'n 11–12, ECF No. 32.)  The SPD further states that "[o]nly the full Board of Trustees (or its authorized designee) is authorized to interpret the

---

[2] The Joint Administrative Record, cited as "AR" in this decision, is filed under seal at ECF No. 27.

terms of the Plan.  The Board of Trustees (or its authorized designee) has sole

discretion to decide questions involving the Plan, including questions regarding []

eligibility for benefits."  (AR 12–13; Intermountain Opp'n 12, ECF No. 32.)  The Board

delegated its "authority to determine the appropriate payments to make to providers

making claims for benefits under the health plan . . . and to respond to appeals from

[those] determinations to JAS.  (App. of Evid., Tab 1, Jensen Decl. ¶ 6, ECF No. 32-1.)

JAS acted as third-party administrator for Intermountain's Plan.  (IHC Mot., Undisputed

Material Fact No. 3, ECF No. 23; Intermountain Opp'n, Add'l Material Fact No. 1, ECF

No. 32; App. of Evid., Tab 1, Jensen Decl. ¶¶ 2–3, ECF No. 32-1; Compl. ¶ 5, ECF No.

2; Answer ¶¶ 5, 6, ECF No. 6.)

As a third-party administrator for the Intermountain Plan, JAS reviewed claims for

eligibility and payment on behalf of the Plan's participants and beneficiaries and

provided financial reports and claims analysis to the Plan's Board of Trustees.

(Intermountain Opp'n, Add'l Material Fact No. 2, ECF No. 32; App. of Evid., Tab 1,

Jensen Decl. ¶ 3, ECF No. 32-1.)  JAS received a fixed monthly fee for its services; it

did not receive incentive payments or bonuses for denying claims.  (Intermountain

Opp'n, Add'l Material Fact No. 4, ECF No. 32; App. of Evid., Tab 1, Jensen Decl. ¶ 7,

ECF No. 32-1.)  JAS, as the third-party administrator for Intermountain's Plan,

determined the amount of benefits to pay to IHC on K.M.'s behalf for the treatment she

received from LDS Hospital.  (Intermountain Opp'n, Add'l Material Fact No. 5, ECF No.

32; App. of Evid., Tab 1, Jensen Decl. ¶ 6, ECF No. 32-1.)  JAS did not receive a

reward or payment for making a particular determination on K.M.'s claim.

(Intermountain Opp'n, Add'l Material Fact No. 5, ECF No. 32; App. of Evid., Tab 1,

Jensen Decl. ¶ 8, ECF No. 32-1.)  JAS provided similar services for other funds, in addition to Intermountain.  (App. of Evid., Tab 1, Jensen Decl. ¶ 4, ECF No. 32-1.)

The billed charges for K.M.'s treatment totaled $78,458.99.  (IHC Mot., Undisputed Material Fact No. 6, ECF No. 23; AR 104, 110, 112, 118, 120, 123, 126, 133, 141, 153, 178 & 183.)  Based on a review conducted by Data iSight, Intermountain, through JAS, determined that the allowable expense for K.M.'s claim was $27,738.80, and Intermountain paid IHC 50% of the allowed amount, or $13,869.40.  (IHC Mot., Undisputed Material Fact Nos. 8, 11, ECF No. 23; IHC Opp'n, Resp. to Undisputed Material Fact No. 8, ECF No. 28; Intermountain Opp'n, Resp. to Undisputed Material Fact Nos. 10–11, ECF No. 32; App. of Evid., Tab 1, Jensen Decl. ¶¶ 6, 8, ECF No. 32-1; AR 108, 114, 125, 126, 133, 141, 151–55, 178.)

IHC claims the Plan provides that it will pay inpatient hospital treatment at an out-of-network provider at 60% of the Usual, Customary, and Reasonable charges ("UCR"); mental health treatment at 80% of the UCR; and emergency room treatment at 95% of the UCR.  (IHC Mot., Undisputed Material Fact Nos. 12–14, ECF No. 23; AR 15.)  IHC cites a Plan document dated October 1, 2003 that states the change took effect January 1, 2003.  (AR 5, 11.)  Intermountain claims an amendment to the Plan IHC relies on took effect June 1, 2006, and governed payment for K.M.'s 2013 treatment at LDS Hospital.  (Intermountain Opp'n, Resp. to Undisputed Material Fact Nos. 12–14, ECF No. 32; AR 187–89.)  The notice of the amendment indicates that the plan will pay for inpatient hospital treatment at an out-of-network provider at 50% of the UCR; that it will pay for "all other medical services," including mental health treatment, at 50% of the UCR; and that it will pay for emergency room treatment at rates ranging from 75%–85%

8

depending on whether the beneficiary has Plan A, B, or C. (AR 189.) IHC cites to the

Plan A schedule of benefits in the 2003 plan in its briefs, (see AR 14–17 ("Plan A

Schedule of Benefits")), but never specifically indicates whether K.M. had Plan A, B, or

C. (See Intermountain Opp'n, Resp. to Undisputed Material Fact No. 14, ECF No. 32.)

Intermountain's SPD defines the UCR as:

> a charge which falls within the common range of fees billed by a majority of health care providers for a procedure in a given geographic region, or which is justified based on the complexity or the severity of treatment for a specific case, as determined from time to time by the Board.

(IHC Mot., Undisputed Material Fact No. 17, ECF No. 23; AR 27.) Data iSight, a third

party used to review K.M.'s claim,

> assign[ed] . . . a severity-adjusted Diagnosis Related Group ("DRG") and benchmark[ed] it against the median cost value for the DRG from a peer group of similar hospitals and similar clinical cases, adjusted for prevailing labor costs through a wage index adjustment; inflation factor adjustments; and a margin factor.

(AR 153; IHC Mot. 6-8, ECF No. 23.)

K.M. executed a written assignment of benefits to IHC. (IHC Mot., Undisputed

Material Fact No. 5, ECF No. 23; AR 1–3.) Paragraph 8 of the written assignment

provides as follows:

> **Assignment of Benefits--Attorney-in-Fact.** By signing below, I hereby assign and transfer to the Facility, and to any other health care provider for whom Facility bills, the benefits of any insurance policy or other arrangement that may provide payment for some or all of my care. I also authorize and appoint the Facility and anyone it may designate as my attorney-in-fact for the purposes of communicating, appealing, negotiating, or otherwise pursuing in its discretion any or all legal remedies with any insurance company, group, organization, entity or any other payer to obtain payment for the Facility for the services that were provided to me. This consent is also intended to meet the requirements of 42 CFR 438.402(b)(ii) which authorizes a provider to file on behalf of an enrollee. I also authorize the Facility to receive and deposit any money received

against the charges of the Facility and of any other health care provider for whom Facility bills.

(IHC Mot., Undisputed Material Fact No. 5, ECF No. 23; AR 2.)

IHC sent requests for plan documents on June 4, 2014, June 19, 2014, August 6, 2014, and September 24, 2014.  (IHC Mot., Undisputed Material Fact No. 22, ECF No. 23; AR 104–06, AR 110–11, AR 118–19, AR 123–24.)  The June 19, 2014 letter included notification of K.M.'s assignment and included a copy of the assignment itself.  (AR 110-111.)  Intermountain did not provide the requested plan documents until October 24, 2014.  (IHC Mot., Undisputed Material Fact No. 23, ECF No. 23; AR 108, AR 114, AR 122, AR 125.)  Intermountain responds that IHC sent the requests to JAS, Intermountain's third-party administrator.  (Intermountain Opp'n, Resp. to Undisputed Material Fact Nos. 22 & 23, ECF No. 32.)

The SPD provides that employees may make requests for plan documents to the Board of Trustees of Intermountain United Food and Commercial Workers and Food Industry and Food Industry Health Fund who is the Plan Administrator at 4885 South 900 East, Suite 202, Salt Lake City, Utah 84117.  (AR 84, 87.)  IHC sent all of its letters to JAS, Inc. at the above address with an opening salutation to the "Plan Administrator."  (AR 104, 110, 118, 123.)  JAS sent all of the reply letters on Intermountain United Food and Commercial Workers and Food Industry and Food Industry Health Fund letterhead, displaying this same address.  (AR 108, 114, 122, 125.)  The SPD also includes a listing of all of the members of the Board of Trustees and their addresses.  (AR 4.)

**I.    IHC Fails to Meet its Burden on Summary Judgment with Respect to its First Cause of Action for Recovery of Plan Benefits**

IHC asserts that the Court should grant it summary judgment on its first claim for relief for recovery of plan benefits under 29 U.S.C. § 1132(a)(1)(B).  (IHC Mot. 2–8, ECF No. 23.)  As an initial matter, IHC argues that the arbitrary and capricious standard of review applies, but the Court should reduce the deference afforded to Intermountain's decision given the severity of the existing conflict of interest.  (Id. at 2–5.)  IHC further argues that the Court should grant summary judgment on its claim for recovery of plan benefits because Intermountain's denial of benefits contradicts Plan documents.  (Id. at 5–8.)  Specifically, IHC asserts Intermountain failed to pay at the rates specified in the Plan documents, and it failed to calculate the UCR as promised in the Plan documents. (Id.)  Intermountain does not move for summary judgment on IHC's first claim for relief but opposes IHC's Motion for Summary Judgment.  Intermountain contends that IHC advocates for the wrong standard of review and cites outdated Plan documents. (Intermountain Opp'n 11–20, ECF No. 32.)

**A.  The Arbitrary and Capricious Standard of Review Applies to IHC's Claim for Recovery of Plan Benefits**

Courts review a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) using the de novo standard of review unless the plan documents give "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, where the plan documents give the administrator this discretionary authority, the Court employs a "'deferential standard of review, asking only whether the denial of

benefits was arbitrary and capricious.'" LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d 789, 796 (10th Cir. 2010) (quoting Weber v. GE Group Life Assurance Co., 541 F.3d 1002, 1010 (10th Cir. 2008)).  Under this arbitrary and capricious standard, the Court considers whether the administrator reasonably interpreted the Plan in good faith, LaAsmar, 605 F.3d at 796, and whether substantial evidence and the law support the administrator's decision.  Hancock v. Metro. Life Ins. Co., 590 F.3d 1141, 1155 (10th Cir. 2009).  Here, Intermountain's Plan documents give Intermountain's Board of Trustees, the Plan administrator, the discretionary authority to determine eligibility for benefits and interpret the terms of the Plan at issue.  Accordingly, the arbitrary and capricious standard of review applies to IHC's first claim for relief.

IHC acknowledges that the arbitrary and capricious standard of review—not the de novo standard—applies, (IHC Mot. 1–3, ECF No. 23), but argues that the Court should lower the degree of deference afforded due to the "severe conflict of interest that exists" since Intermountain "sits in a position where it is paying claims made pursuant to the ERISA plan, all the while leaving unto itself and its agents 'sole discretion' to make benefit determinations under the Plan."  (Id. at 3–4.)  Intermountain counters that IHC presents no evidence of a conflict of interest, other than occasional references to the administrative record and pleadings, and that IHC misunderstands controlling case law, as it cites only to cases predating the Supreme Court's decision in Metropolitan Life Insurance Company v. Glenn, 554 U.S. 105 (2008).  (Intermountain Opp'n 13–17, ECF No. 32.)

In Glenn, the Supreme Court found that when an entity administering an ERISA plan "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket" a conflict of interest arises, and "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits."[3]  554 U.S. at 108.  The Supreme Court further held that a court should weight this factor more or less heavily depending on the conflict's magnitude:

> The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.  It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

Id. at 117 (citations omitted).

Here, Intermountain both administers the Plan at issue and pays benefits out of the Fund.  As a result, the Court finds a conflict of interest exists and must serve as a factor in determining whether Intermountain denied benefits arbitrarily and capriciously.  However, the Court finds the conflict of interest in this case de minimis.  As Intermountain points out, IHC has not submitted any evidence outside the administrative record and pleadings concerning the conflict of interest.  For example, IHC did not present any evidence to show that Intermountain had a history of biased claims

---

[3] The Glenn decision refers to the standard of review in ERISA cases as "abuse of discretion," while many Tenth Circuit cases refer to the standard of review as "arbitrary and capricious."  "[I]n the ERISA context, these standards of review are practically identical."  Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 526 n.2 (3d Cir. 2009).

administration.  On the other hand, Intermountain submitted evidence showing the

measures it took to combat the conflict of interest.  IHC submitted a declaration from

D.A. Jensen, former president and fund manager for JAS, indicating that Intermountain

hired JAS as a third-party administrator to review claims for eligibility and payment on

behalf of the Plan's participants and beneficiaries, including the claim at issue in this

case.  Mr. Jensen noted that JAS received a fixed monthly fee for its services and did

not receive incentive payments or bonuses for denying claims.  He further indicated that

JAS made the determination of the benefits paid to IHC on K.M.'s behalf for the

treatment she received from LDS Hospital beginning in October 2013, and that JAS did

not receive a reward or payment for making a particular determination on K.M.'s claim.

Given the steps taken by Intermountain to isolate the claims administrator from

the finances of the fund and the lack of evidence that the conflict of interest impacted

the benefits determination, the Court finds the conflict of interest of little import.

Nevertheless, the Court will factor the minimal conflict of interest in this case into its

review, consistent with the Supreme Court's decision in Glenn.

### B. IHC Relies on the Wrong Plan Documents, Precluding Summary Judgment

IHC argues that the amount it received in connection with K.M.'s claim was

"contrary to the Plan Document" and therefore arbitrary and capricious.  (IHC Mot. 5,

ECF No. 23.)  First, IHC argues that the Plan document provides that the Plan will pay

hospital inpatient treatment at an out-of-network provider at 60% of the UCR, mental

health treatment at 80% of the UCR, and emergency room treatment at 95% of the

UCR.  (IHC Mot. 5–6, ECF No. 23.)  Because Intermountain paid only 50% of the

allowed amount, IHC contends Intermountain violated the Plan which provides, at a

minimum, that it will pay inpatient treatment at 60% of UCR. (Id.) As Intermountain

correctly points out, IHC cites the wrong Plan. (See Intermountain Opp'n 17–18, ECF

No. 32.) The Plan document IHC relies on dates from October 1, 2003, and the change

took effect January 1, 2003. However, IHC ignores the later amendment to the Plan,

which took effect June 1, 2006 and applied to "all current employees." The amended

Plan provides that Intermountain will pay inpatient hospital treatment at an out-of-

network provider at 50% of the UCR, "all other medical services," including mental

health treatment, at 50% of the UCR, and emergency room treatment at rates ranging

from 75%–85% depending on whether the beneficiary falls in Plan A, B, or C.

K.M. received treatment at LDS Hospital in 2013; therefore, the amended

schedule of benefits that became effective June 1, 2006 applies to her claim. IHC's

reliance on an outdated SPD to support its argument that Intermountain's denial of

benefits was arbitrary and capricious since it did not pay more than 50% of the allowed

amount precludes summary judgment on its first claim for relief.

No evidence supports IHC's claim that Intermountain should have paid more than

50% of K.M.'s inpatient treatment costs or mental health treatment costs. IHC's Motion

implies that certain of the treatment at issue qualifies as emergency treatment but does

not specifically state the treatment or charges it believes fall into this category. The

Administrative Record similarly fails to include documentation that would allow the Court

to draw this line without the assistance of the parties. In addition, while IHC cites to

Intermountain's Plan A schedule of benefits in the 2003 plan—implying that Plan A

covered K.M.—IHC never points to any evidence showing whether Plan A, B, or C

covered K.M. To the extent IHC is entitled to the payment of benefits for emergency

services at an amount higher than 50%, the amount of payment that it should receive depends on whether Plan A, B, or C covered K.M. Thus, the Court denies IHC's Motion for Summary Judgment as to the percentage of benefits Intermountain should have paid.

### C. IHC Fails to Show that Intermountain Calculated the UCR in an Unreasonable Manner

IHC also argues that Intermountain's calculation of the UCR contradicts the SPD's definition of the UCR. (IHC Mot. 6–8, ECF No. 23.) In particular, IHC claims the UCR definition "includes a focus on geographic region, but the calculation provided by Data iSight is based on the median cost of 'a peer group of similar hospitals and similar clinical cases, adjusted for prevailing labor costs through a wage index adjustment; inflation factor adjustments; and a margin factor.'" (Id. at 6–7.) IHC asserts that wage index adjustment is not provided for in the Plan's UCR definition and "suggest[s] that the comparison group used was not with the same 'geographic region' specified by the Plan Document." (Id. at 7-8.) IHC further asserts that Intermountain has "not divulged the hospitals in [the peer group of similar hospitals] or where they are located" and therefore concludes that the "calculation cannot be considered as geographically comparable as required by the Plan Document." (Id. at 8.)

Under the arbitrary and capricious standard the Court limits its review to "determining whether the interpretation of the plan was reasonable and made in good faith." Cardoza, 708 F.3d at 1201 (quoting LaAsmar, 605 F.3d at 796).

> Courts review ERISA claims as they "would any other contract claim by looking to the terms of the plan and other evidence of the parties' intent. If plan documents are reviewed and found not to be ambiguous, then they may be construed as a matter of law." Hickman v. GEM Ins. Co., 299 F.3d 1208, 1212 (10th Cir. 2002); see also Kennedy v. Plan Adm'r, 555

U.S. 285, 299–302 (2009) (stating the text of the plan documents controls). In making this determination, this court "consider[s] the common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words to mean." <u>Scruggs v. ExxonMobil Pension Plan</u>, 585 F.3d 1356, 1362 (10th Cir. 2009) (quotation and alteration omitted).

<u>Id.</u> at 1203.

IHC has not met its burden on summary judgment to show that Intermountain calculated the allowed amount unreasonably, and therefore arbitrarily and capriciously, under the Plan's UCR definition. Intermountain's SPD defines the UCR as:

a charge which falls within the common range of fees billed by a majority of health care providers for a procedure in a given geographic region, or which is justified based on the complexity or the severity of treatment for a specific case, as determined from time to time by the Board.

The Plan's language regarding the geographic region is broad and does not define geographic region. Further, the Plan language provides for an alternative calculation of the UCR based on the complexity or the severity of treatment for a specific case. The Plan language is unambiguous.

IHC claims that that Data iSight's use of the wage index adjustment "suggest[s]" that the comparison group used was not in the same geographic region and also claims that Data iSight's use of "a peer group of similar hospitals" as a comparison shows that the calculation cannot be considered as geographically comparable. (IHC Mot. 8, ECF No. 23.) Intermountain does not respond to this point, except to say "Data iSight looked at 213 facilities and 67,339 benchmark cases to determine the allowable amount. (AR at 181)." (Intermountain Opp'n 20, ECF No. 32.) The administrative record shows that Data iSight

assign[ed] . . . a severity-adjusted Diagnosis Related Group ("DRG") and benchmark[ed] it against the median cost value for the DRG from a peer

group of similar hospitals and similar clinical cases, adjusted for prevailing labor costs through a wage index adjustment; inflation factor adjustments; and a margin factor.

(AR 153.) This description of the calculation falls within the second possible way to calculate reimbursable amount, tying it the complexity or severity of the treatment. IHC fails to show that the UCR calculation runs contrary to the Plan's definition given the calculation falls under one of the two possible processes.

IHC also takes issue with the use of the median cost value rather than the mean, claiming that the use of the mean excludes severe cases. (IHC Mot. 8, ECF No. 23.) However, use of a severity-adjusted DRG necessarily incorporates consideration of treatment for similar severity levels. Furthermore, there is nothing inherently unreasonable about the use of the median rather than the mean, and nothing in the Plan commits Intermountain to one rather than the other.

Because the administrative record shows the UCR calculation falls within one of the two definitions of UCR provided by the Plan's plain language, the Court finds IHC failed to show Intermountain acted arbitrarily or capriciously. Accordingly, the Court DENIES IHC's motion for summary judgment on its first claim for relief.

## II. The Court Reserves Judgment on IHC's Third Cause of Action for Failure to Produce Plan Documents Pending Clarification Regarding the Administrator

IHC argues that the Court should grant it summary judgment on its third claim for relief for failure to produce plan documents because it "stands in the place of the plan beneficiary (K.M.) as a beneficiary of the plan." (IHC Mot. 10, ECF No. 23.) IHC further asserts that Intermountain bears responsibility for JAS's purported failure to produce plan documents since JAS is Intermountain's agent. (Id. at x, 1.) Intermountain claims

the Court should grant it summary judgment on this claim because the assignment from

K.M. to IHC does not include the right to sue for statutory penalties for failure to produce

plan documents. (Intermountain Mot. 10–14, ECF No. 24.)

ERISA § 104(b)(4) provides that:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). ERISA § 502(c) provides that:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B); see also 29 C.F.R. § 2575.502c-1 (setting the maximum civil

monetary penalty for violations at $110 per day). "A civil action may be brought . . . by a

participant or beneficiary . . . for the relief provided for in subsection (c) of this section."

29 U.S.C. § 1132(a)(1)(A). ERISA defines a "beneficiary" as "a person designated by a

participant, or by the terms of an employee benefit plan, who is or may become entitled

to a benefit thereunder," and a "participant" as "any employee or former employee . . .

who is or may become eligible to receive a benefit of any type from an employee benefit

plan." 29 U.S.C. § 1002(8), (7).

Before considering whether IHC qualifies as a beneficiary, the Court considers

the threshold issue of whether Intermountain qualifies as the administrator such that the

Court can find it liable for failure to produce plan documents. Neither of the parties

addresses this issue in its briefs, and in fact, Intermountain concedes that IHC named the proper defendant for purposes of the parties' motions for summary judgment. However, Intermountain's stipulation specifically refers to IHC's suing the Fund rather than the Plan and omits any reference to the Administrator. This ambiguous concession coupled with ERISA's language and Tenth Circuit precedent leaves the Court questioning whether it has authority to impose civil penalties for failure to produce plan documents against the only defendant in this case.

Under ERISA, the plan "administrator" must provide information to plan participants, and courts may hold administrators liable for the failure to provide such information. <u>See</u> 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1). ERISA defines the plan "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). The SPD names Intermountain's Board of Trustees the Plan Administrator and lists all of the members of the Board of Trustees and their addresses. IHC did not name the Board or any of the trustees as defendants.

The Tenth Circuit interprets ERISA as providing statutory liability for the designated plan administrator only, "not [] the employer or its other employees." <u>McKinsey v. Sentry Ins.</u>, 986 F.2d 401, 404-05 (10th Cir. 1993); <u>see</u> <u>also</u> 29 U.S.C. § 1132(c)(1) (providing that "[a]ny administrator" may be held "personally liable"). In <u>McKinsey</u>, the plaintiff sued his employer as the de facto administrator of the plan. <u>Id.</u> at 402. The plan named Mr. "Alfred Noel, a vice president of Human Resources, as the plan administrator." <u>Id.</u> at 404. The court found only Mr. Noel could have liability, not the employer. <u>Id.</u> at 404-05.

In this case, the Board of Trustees is the Plan Administrator, not the Plan itself—which is the only defendant IHC named. Had IHC named the Board or individual trustees, its argument that the Court should impute JAS's actions to them could possibly succeed. See Averhart v. US West Mgmt. Pension Plan, 46 F.3d 1480, 1490 n.8 (10th Cir. 1994) (noting while only named plan administrator has liability for civil penalties, a party may show the court should impute the actions of others to the administrator); McKinsey, 986 F.2d at 404-05 (stating "the actions of the other employees may be imputed to the plan administrator"). Without clarification from the parties on the issue of the administrator, the Court cannot decide the cross motions for summary judgment on the failure to produce documents.

Accordingly, the Court RESERVES judgment on Intermountain's and IHC's Motions for Summary Judgment on this claim.

## CONCLUSION

For the foregoing reasons, the Court DENIES IHC's Motion for Summary Judgment on its claim for benefits (ECF No. 23), GRANTS Intermountain's Partial Motion for Summary Judgment on the fiduciary duty claim (ECF No. 24), and RESERVES judgment on the claim for failure to produce plan documents. (ECF Nos. 23, 24) The parties should come to the final pretrial conference with a proposal about how to proceed.

DATED this 5th day of June, 2018.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge